**MORPHOSYS AG, Plaintiff,**

v.

**CAMBRIDGE ANTIBODY TECHNOLOGY LIMITED, Defendant.**

No. CIV.A.99–1012.

United States District Court, District of Columbia.

March 8, 2002.

John Skilton, David J. Harth, Mireya Llaurdao, Colin G. Sandercock, Paul M. Booth, Heller Ehrman White & McAuliffe, Washington DC, John Skilton, David J. Harth, Heller Ehrman White & McAuliffe, Madison, WI, for Plaintiff.

Keith J. Harrison, Steven Schaars, Trina L. Fairley, King, Pagano & Harrison, Washington, DC, David W. Clough, Audrey L. Bartnicki, Marshall, O'Toole, Gerstein, Murray & Borun, Chicago, IL, Brian H. Corcoran, Roger Furey, Katten Muchin Zavis, Washington, DC, Timothy J. Vezeau, Jane J. Choi, Katten Muchin Zavis, Chicago, IL, for Defendant.

### *MEMORANDUM*

ROBERTSON, District Judge.

This memorandum, when read together with the Court's memorandum opinion of August 17, 2001 and the Court's memorandum, notice and order filed December 21, 2001, sets forth the reasons for the Court's order, entered today, granting partial summary judgment against Cambridge Antibody Technology Limited and in favor of Morphosys AG on CAT's claim of infringement (and Morphosys's prayer for a judicial declaration of non-infringement), and certifying that partial summary judgment as final pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

CAT's central argument in opposition to the entry of judgment on the infringement claim is that the basis of my ruling, suggested and then announced in the two earlier memoranda, improperly compares Morphosys's HuCAL library with the libraries exemplified or disclosed in the '793 patent, rather than with the *claims* of

the '793 patent. The principal focus of that argument is on the observation in the August 17 memorandum, p. 10, that "Morphosys's HuCAL library and CAT's 'semi-synthetic' library both may be said to have 'theoretical' components, [footnote omitted] but they appear to be derived in completely different ways." While it is true that *statement* compares the two libraries, the comparison is made for the purpose of giving shape to the word "theoretical" as it appears in the claim construction. CAT asserts that "there has never been a dispute or a question that 'theoretically' means, *e.g.*, 'using gene segments that are not taken from a human but created *in vitro* on the basis of an analysis of published human amino acid sequences,'" Response Mem. at 5, Defendant's Statement of Fact No. 3. The source of that quotation is the October 11, 2000, memorandum in which I amended my original construction of the disputed claims of the '793 patent, over Morphosys's objection. Morphosys had argued for a claim construction that excluded the word "theoretical" and was presumably concerned that its HuCAL library might be deemed to infringe a patent claiming "theoretical" derivation. The October 11 memorandum overruled the Morphosys objection but was at pains to point out that the record at that point consisted only of intrinsic evidence that did not demonstrate "why a process that begins with all human sequences and uses all human sequences cannot be considered 'derived from a human' when the sequences are rearranged *in vitro* by mutation or created using a theoretical analysis of published sequences." The evidence adduced at trial changed the picture:

> Now that I have heard testimony explaining the nature of theoretical analysis of published sequences, such as that used in the HuCAL library (Trial Tr. 737–51), it seems clear to me that no reasonable jury could find that the Hu-CAL library, whose starting point is the-

oretical analysis of data, is "derived from a human"—and certainly not "from a human unimmunized with the said self antigen and not having antibodies specific for said self antigen found in the sera." The derivation of nucleic acid from computer analysis of sequences found in published databases would seem to amount at most to derivation "by reference to" a human—an additional meaning of the phrase "derived from" that was proposed by CAT but expressly excluded from this Court's construction of the claim.

Oct. 11, 2000 Mem. at 9–10. With post-trial, post-briefing hindsight, it appears that "theoretical" is a problematic word, and one is tempted to clarify—or, perhaps, construe—the claim construction. But that would only engender another round of briefing on a dispute that needs to be brought to a close in order that the parties may have the appellate review that is so clearly indicated in this case. Suffice it to say that, when comparing the HuCAL library against the claims of the '793 patent as I have construed them, whatever may be said to be "theoretical" about the process of developing the HuCAL libraries is not what I meant by theoretical. Or, to put it another way, the HuCAL library is not what the '793 patent claims. The August 17 memorandum gave the proper legal framework to that finding: "No reasonable jury could find that the HuCAL library, whose starting point is theoretical *analysis of data*, is 'derived from a human'—and certainly not 'from a human immunized with the said self-antigen and not having antibodies specific for said self-antigen found in the sera.'" Mem. at 9–10 (emphasis added).

CAT was notified of that finding and given the opportunity to augment the record or to identify genuine issues of material fact before judgment would be entered upon it. It is not until the bottom of page

11 of its response to the December 21 order, however, that CAT gets around to discussing "material facts." And when it does, rather than identify genuine issues of material fact, CAT recites what it contends are *undisputed* facts that, in its submission, "preclude a grant of summary judgment of non-infringement" because such a judgment "would be against the overwhelming weight of evidence." *Id.* at 12. CAT's discussion of what it calls material facts is another version of the same central argument discussed, and rejected, above, namely that the HuCAL library "contains filamentous bacteriophage which contain nuclear acid with sequence *obtained theoretically from a human.*" *Id.* at 12–13. Once again, that argument begs the question of what "theoretical" means. And CAT's final argument, that I have improperly focused on the derivation of the HuCAL "library" rather than on the derivation of the "sequence" of the nuclear acid in the bacteriophage in the HuCAL library, is yet another variant of the same argument.

Not one of CAT's "material facts" (which CAT itself asserts are undisputed) is or raises a genuine issue of material fact. Fed.R.Civ.P. 56(c). Morphosys's motion for summary judgment on CAT's claim of infringement, and on its own claim of non-infringement, will be granted. There is no just reason to delay the entry of final judgment on the infringement claim. Indeed, any further delay in freeing these parties to seek appellate review of the rulings in this case would be contrary to the interest of justice.

### ORDER

For the reasons set forth in the accompanying memorandum, and in the Court's memoranda of August 17, 2001 and December 21, 2001, it is this _____ day of March 2002 by the Court *sua sponte,*

**ORDERED** that Morphosys shall have summary judgment on its claim for a declaratory judgment as to non-infringement and on CAT's claim of infringement of the '793 patent. It is

**FURTHER ORDERED,** based upon the express determination set forth in the accompanying memorandum and pursuant to Federal Rule of Civil Procedure 54(b), that the judgment entered upon the infringement claims shall be final. And it is

**FURTHER ORDERED** that all other outstanding motions in this case are denied as moot.